Argued and submitted May 29, 2014, affirmed March 18, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

NATHAN OWEN PIERCE,
aka Nathan O. Pierce,
*Defendant-Appellant.*

Multnomah County Circuit Court
090747614; A154254

346 P3d 618

Rond Chananudech, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Peenesh H. Shah, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Wollheim, Senior Judge.

DUNCAN, P. J.

## DUNCAN, P. J.

In this criminal case, defendant appeals the trial court's judgment convicting him of second-degree forgery, ORS 165.007, and second-degree theft, ORS 164.045. He assigns error to the court's denial of his motion to exclude a store security guard's testimony about what he saw while using the store's closed-circuit cameras and video monitors to visually track defendant in the store. Defendant argues that the guard's testimony was offered to prove the "content of a recording" and, therefore, was barred by OEC 1002, the "best evidence rule." The rule provides, in pertinent part, that, "[t]o prove the content of a writing, recording or photograph, the original writing, recording or photograph is required[.]" For the reasons explained below, we conclude that the officer's testimony was not offered to prove the content of a recording and, therefore, was not subject to the best evidence rule. Accordingly, we affirm.

We begin with the historical facts relevant to defendant's motion, which we take from the evidence presented at the hearing on defendant's motion, viewed in a manner consistent with the trial court's ruling on the motion. *See State ex rel OHSU v. Haas*, 325 Or 492, 498, 942 P2d 261 (1997) (when reviewing a trial court's pretrial determination of the admissibility of evidence, the court views the record in a manner consistent with the trial court's ruling).

Defendant walked into a Walmart store, and a security guard, who was using the store's closed-circuit cameras and video monitors to observe activity in the store, recognized defendant as a member of a large theft ring. The guard then used the cameras and monitors to visually track defendant as he moved throughout the store. The guard saw defendant replace the price tag on an item with a fraudulent price tag, present the item for purchase, and purchase the item at the price on the fraudulent tag, which was lower than the store's price.

The guard watched defendant on the "live video feed" from the cameras, which is displayed on monitors in the store's security office. The guard did not make any in-person observations of defendant in the store's shopping areas.

Video from the cameras is automatically recorded on the store's video recording system and saved for between three and six months. Video recorded on the system can be copied to a disc. After defendant was arrested, the guard watched the recorded video of defendant and copied it to a disc. At the motion hearing, the guard could not recall whether he had given the disc to the police or the district attorney's office, and, because he no longer worked for Walmart, he did not know whether the disc was still in the store's security office.

The trial court ruled that the guard could testify to what he saw on the "live video feed," but not to what he saw on the recorded video. After the court's ruling, defendant entered a conditional plea, reserving his right to appeal the ruling.

On appeal, defendant argues that the trial court erred in admitting the security guard's testimony regarding what he saw on the "live video feed." Defendant contends that the testimony was evidence of the content of a recording and, therefore, subject to the best evidence rule, under which it could be admitted only if the state first proved that the recording itself had been lost or destroyed through no fault of its own. Defendant makes two arguments as to why the testimony was evidence of the content of a recording. We address them in turn.

First, defendant argues that the security guard's testimony about what he saw on the "live video feed" was evidence of the content of a recording because the "live video feed" is itself a recording. Specifically, defendant argues that the "live video feed" is a "moving picture," and "moving pictures" are "photographs" for the purposes of the best evidence rule. OEC 1001(3) ("'Photographs' includes still photographs, X-ray films, video tapes and motion pictures.").

We reject defendant's argument. Defendant did not develop the record regarding the transmission of the images from the cameras to the monitors, and we cannot conclude that the transmission, which was described without contradiction as a "live video feed" and which appears to have been nearly instantaneous, constitutes a "photograph" or other "recording" for the purposes of the best evidence rule. We acknowledge that viewing an image on a monitor

is different from viewing the image with one's own eyes (or with vision-enhancing lenses, like binoculars), because the image on the monitor was captured by a camera and converted into an electronic form for transmission to the monitor. But, the same is true for sound that is transmitted from one telephone to another and, as illustrated by one of the cases defendant cites, such transmissions are not subject to the best evidence rule. *U.S. v. Howard*, 953 F2d 610, 612-13, *reh'g den*, 961 F2d 224 (11th Cir 1992) (holding that the best evidence rule did not apply to a law enforcement officer's testimony about what he heard when monitoring a telephone conversation between an informant and the defendant, who was in a different location than the officer).

Defendant's second argument regarding why the best evidence rule applies to the security guard's testimony is that the testimony concerns the same images that the store's video recording system automatically recorded. Defendant contends that, because the guard's observations "[were] *through* the [video] monitors that displayed the precise images that were digitally recorded[,]" the guard's testimony about what he saw on the monitors "was evidence regarding the contents of the recording[,]" and, therefore, "[t]he best evidence rule applies."

We reject that argument as well. As defendant acknowledges, the fact that a recording of a sound or image is made does not preclude a person from testifying about his or her simultaneous observations of the sound or image. As Professor Kirkpatrick explains, "[e]ven though a writing, recording or photograph exists that could be used to prove a particular fact, a party is not barred by the best evidence doctrine from using alternative forms of proof." Laird C. Kirkpatrick, Oregon Evidence §1002.03[3], 1003 (6th ed 2013). Thus, for example,

> "[t]he rule does not require the production of a tape recording to prove a conversation merely because the conversation was taped. If it is what the person said that is at issue, and the statements can be proven by a witness who heard the statements made, the rule is inapplicable. If the witness did not hear the conversation personally, and only gained knowledge of the statements from a recording, the rule applies and the recording must be produced."

*Id.* at 1004 (internal citations omitted).

In this case, the trial court allowed the security guard to testify to his observations made while watching the "live video feed," and not those made when he later reviewed the video recording. The guard's viewing of the "live video feed" is akin to listening to a telephone conversation as it occurs. The fact that a recording was made did not preclude the officer from testifying to his independent observations. *See Howard*, 953 F2d at 612 (holding that a law enforcement officer's testimony about what he had heard during a telephone conversation was not barred by the best evidence rule, even though the conversation was tape recorded, because "the proffered testimony was offered not to prove the content of the tapes, but rather, the content of the conversations"). The best evidence rule prohibits testimony about the contents of a recording; it does not prohibit testimony about events that are monitored, as they occur, through a device that also records. As the trial court explained, allowing the officer to testify regarding what he saw on the video monitors did not violate the best evidence rule because it was

> "hardly any different than if somebody saw something with their eyes, took a picture, and that picture somehow got lost or disappeared. The suggestion that [the person's testimony should be excluded] * * * isn't supported by [the best evidence rule], which relates to secondary testimony about the contents of recordings or photographs."

In sum, because we conclude that the security guard's testimony was not offered to prove the content of a recording, it was not subject to the best evidence rule, and, therefore, the trial court did not err denying defendant's motion to exclude it under the rule.

Affirmed.